# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARY CULBERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-09-354-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Mary Culberson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner's is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 11, 1958, and was fifty years old at the time of the administrative hearing (Tr. 29, 123). She has a GED, completed two years of college, and took vocational training for medical billing and coding (Tr. 143), and has worked as a secretary and floor attendant (Tr. 55). The claimant alleges that she has been unable to work since July 15, 2004 due to discogenic and degenerative back disorders and affective mood disorders (Tr. 64).

## Procedural History

On September 12, 2006, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 123-31). Her application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated May 11, 2009 (Tr. 6-23). The Appeals Council denied review; thus, the ALJ's written opinion is the final decision of the Commissioner for purposes this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a "narrow range" of sedentary work, as defined in 20 C.F.R. § 404.1529, *i. e.*, she could lift/carry ten pounds occasionally and five pounds frequently, stand/walk two hours in an eight-hour workday, sit six hours of an eight-hour workday, climb and stoop only occasionally, and perform

simple and some complex tasks and interact with others on a superficial basis only (Tr. 14-15). The ALJ concluded that although the claimant could not return to any past work, she *was not* disabled prior to November 11, 2008 because there was work she could perform in the regional and national economies, *e. g.*, assembler and hand worker. The ALJ found that the claimant *was* disabled after November 11, 2008 because her age category changed and consequently there were not a significant number of jobs in the national economy that she could perform. (Tr. 22-23).

## Review

The claimant contends on appeal that the ALJ erred by failing to properly evaluate the opinion of her treating physician, Dr. Kenneth Foster, M.D. The Court finds this contention persuasive for the following reasons.

The record reveals that the claimant's severe impairments included degenerative disc disease of the cervical and lumbar spine, status post fusion and hardware removal, status post remote bilateral median and ulnar decompression, osteoporosis, hypertension, stress headaches, and adjustment disorder with mixed anxiety and depressed mood (Tr. 13). Dr. Foster treated the claimant from May 8, 2007 until August 13, 2007, for her mental impairments. On June 22, 2007, he completed a mental RFC assessment based on his May 8 psychiatric evaluation, finding that the claimant had moderate to extreme impairments in all areas of functioning (Tr. 573-76). He further stated that the claimant was "easily panicked" and had a "limited tolerance for stress" (Tr. 575). Dr. Foster's handwritten treatment notes were difficult to decipher, but on the first day he treated the claimant he checked a box indicating that she was seriously mentally ill, and assigned her

a global assessment of functioning score of 38 (Tr. 562). Although his treatment notes are largely illegible, he repeatedly checked boxes indicating both that the claimant was in remission and partial remission; that she was appropriate, cooperative, and compliant; but that she made minimal to average progress toward treatment goals (Tr. 564-69).

At the January 13, 2009 administrative hearing, the claimant's relevant testimony revealed that she was not seeing a psychiatrist, but that she was scheduled to see one the next day; that she quit seeing Dr. Foster because he prescribed a number of medications and she had an adverse physical reaction to one of them; and that she had heard that he "got in trouble," although she was not sure the nature of the trouble (Tr. 45, 52, 54).

The ALJ's summary of Dr. Foster's treatment acknowledged the mental RFC, but focused on his treatments notes. The ALJ stated, "[A]fter prescribing various antidepressant medications . . . he indicated that all of claimant's mental impairments were in remission, that claimant had therapeutic benefits from her medications, that she was cooperative, compliant, and appropriate, and that she had no contraindications in the continued use of her medications" (Tr. 17). The ALJ noted that the claimant had not returned to Dr. Foster after August 2007, and recounted the claimant's own statements that she had stopped seeing him because he prescribed too many medications (Tr. 17).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled

to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations; (ii) the nature and extent of the treatment relationship; (iii) the degree of relevant evidence supporting the opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the physician is a specialist; and, (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ assigned "little weight" to Dr. Foster's opinion here because: (i) he made the assessment after a limited number of visits, (ii) he noted that the claimant's "symptoms improved dramatically" shortly after beginning treatment, (iii) he treated the claimant for only three months, and (iv) there was no evidence of further mental health treatment after the claimant left his care (Tr. 20-21). Nevertheless, the Court finds that ALJ failed to analyze the evidence of the claimant's mental impairment in sufficient detail for the following reasons.

First, the ALJ discussed Dr. Foster's treatment notes indicating that the claimant's "symptoms improved dramatically" shortly after treatment began, that her symptoms were "in remission," that she had therapeutic benefits from her medications, and that she was "cooperative, compliant, and appropriate" (Tr. 17, 21), but did not mention that Dr. Foster also indicated that the claimant was only in *partial remission* and was making only minimal to average progress toward her goals (Tr. 564-69). *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir.

1984).  *See also Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Second, the ALJ observed there was no evidence of mental health treatment after the claimant left Dr. Foster's care, but as the Commissioner points out, she continued to get refills on her antidepressant medications from her other treating physicians.  Further, the claimant stated at the administrative hearing that she was seeing a psychiatrist the next day (Tr. 22).  There is no indication from the medical record if this occurred, but the ALJ "has a basic duty of inquiry to fully and fairly develop the record as to material issues," *Baca v. Department of Health & Human Services*, 5 F.3d 476, 479-80 (10th Cir. 1993), which includes "obtaining pertinent, available medical records which come to [the ALJ's] attention during the course of the hearing."  *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).  Under the circumstances, the ALJ should have attempted to find out if the claimant *did* seek additional mental health treatment after the administrative hearing, and if so, determine whether such treatment would impact his decision that she was not disabled before November 11, 2008.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  On remand, the ALJ should:  (i) reconsider Dr. Foster's assessment in accordance with the appropriate standards; (ii) determine if there

is other evidence of mental health treatment of the claimant; and, (iii) determine what impact, if any, such analysis has on the claimant's RFC before November 11, 2008.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The ruling of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of March, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma